UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| | *   **Crim. No.: 08-64 (RCL)** |
| v. | * |
| | * |
| | * |
| ZONA ALBRITTON, | * |
| | * |
| Defendant. | * |
| | * |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Zona Albritton, through undersigned counsel, respectfully submits the following memorandum in aid of sentencing.

**Procedural History**

Ms. Albritton is before the Court awaiting sentencing after she entered a guilty plea on April 4, 2008. Ms. Albritton pled guilty to count 1 of the indictment which charged her with Embezzlement of Union Funds in violation of 29 U.S.C. § 501(c). Pursuant to the conviction Ms. Albritton faces a maximum sentence of ten years of incarceration, followed by a term of supervised release of not more than three and a half years, a fine of not more than $10.000, an order of restitution, and a special assessment of $100.00.

In the Pre-Sentence Report ("PSR"), Probation Officer Crystal Lustig, has calculated a sentencing range of 12-18 months of incarceration pursuant to the advisory United States Sentencing Guidelines. The range is based on a Base Offense Level 13 and a Criminal History Category I. Ms. Albritton will appear before the Court for her Sentencing Hearing on June 26, 2008.

## ARGUMENT IN SUPPORT FOR A SENTENCE OF PROBATION OR IN THE ALTERNATIVE ONE (1) YEAR OF HOME DETENTION

**Personal History and Background**

Ms. Albritton is before this Court facing her first criminal conviction. The instant offense is anomalous in an otherwise exemplary life of impeccable conduct, verified work history and loyalty and responsibility to her family. Her appearance in a sentencing hearing will be an errant departure from the principles and values that she has followed throughout her life.

There is no simple or defensible explanation for Ms. Albritton's conduct. However, Ms. Albritton did not use the embezzled money to indulge in material possessions. There is nothing in her possession that points to an extravagant lifestyle or the accumulation of material objects beyond her means. On the contrary a substantial amount of money went to support her mother, Mrs. Della Clark. Ms. Clark walked out on her husband of more than twenty years when allegations were confirmed that he had abused one of her foster children. As a result of her walking out on her husband, Mrs. Clark left all her material possessions behind and was forced to live out of her car. When Ms. Albritton discovered this fact, she used all her means to support her mother. This put an enormous strain on Ms. Albritton.

Ms. Albritton's desire and effort to help her mother, through illegal means, is also uncharacteristic in view of how she was raised and how she has lived her life. Ms. Albritton's siblings were unavailable to help with Ms. Clark at that time. In short, it appears that Ms. Albritton was overwhelmed with desperation in seeing her mother succumb to various levels of deprivation. Again, there is no incident or set of circumstances to justify Ms. Albritton's illegal conduct in embezzling some seventy five

thousand dollars from American Federation of State, County, and Municipal Employees (AFSCME).

Once she stopped working for AFSCME, Ms. Albritton went back to being the honorable person that she has always been. As the Pre-Sentence Investigation details, Ms Albritton has a verifiable work history. She has never relied on government assistance. Currently, she is gainfully employed as the Director of Engineering at Marriott located at 775 12th Street, NW, Washington DC and by all accounts has done an exemplary job. Ms. Albritton has worked at the Marriott since December 2004. As a result, there is clearly every indication that she can be a responsible and productive citizen.

Although she has brought about a great deal of shame to herself, Ms. Albritton has taken major steps in putting her life back together. By no means has the shame diminished her role and standing in her family. Family members recognize that Ms. Albritton has done something terribly wrong and completely out of character. However, they recognize that Ms. Albritton has always gone out of her way for her family in need.

Equally important in turning her life around was Ms. Albritton's unfettered resolve to plea guilty to her wrongful conduct. Her decision was based on the simple fact that she had taken money that didn't belong to her. She recognized that it was her dishonesty that resulted in her legal predicament.

Ms. Albritton wants to prove to the Court, her family and the government that she can contribute to her community and that she can and will live out the remainder of her adult life in a lawful manner. Ms. Albritton is asking the Court for leniency so that she may continue to work, pay back the money she wrongfully took, and make amends through community service and home confinement.

As a first time criminal offender Ms. Albritton wants the opportunity to demonstrate a commitment to responsible and law-abiding behavior. On account of the totality and circumstance of her life and pursuant to the applicable sentencing statute and case law, Ms. Albritton respectfully requests that the Court sentence her to a period of five years probation or one year of home confinement with ability to work so that she may continue to make restitution as part of a five year probation period.

**PURSUANT TO <u>UNITED STATES V. BOOKER</u>, 18 U.S.C. § 3553(a), 18 U.S.C. § 3582, 18 U.S.C. § 3562 AND 28 U.S.C. § 991(b)(1)(B) THE COURT HAS AUTHORITY TO SENTENCE MS. ALBRITTON TO A TERM OF PROBATION AND HOME CONFINEMENT**

In <u>United States v. Booker</u>, the Supreme Court held that the mandatory sentencing guidelines were unconstitutional as applied. 125 S. Ct. 738 (2005). The Court further holds that judges are required to "take account of the Guidelines <u>together</u> <u>with</u> other sentencing factors," and to "consider" the guidelines along with all the other required factors (emphasis added). The Court is not bound by the guideline range and there is no requirement that a sentence be within the guideline range. The guideline range is just one factor to be considered along with the mandatory statutory factors delineated in 18 U.S.C. § 3553(a).

Those factor include among, other things, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with the needed educational and vocational training, and pertinent policy statements issued by the sentencing commission, the need to avoid unwarranted sentencing disparities among similarly situated defendants. <u>U.S. v. Clifton Price</u> 409 F.3d 436, 442 (D.C. Cir. 2005). Moreover, Sentencing Courts have a continuing duty to

4

"[w]eigh the purposes of sentencing listed in the Sentencing Reform Act." U.S. v. Jabber 362 F.Supp.2d 365, 369 (D. Mass. 2005).

The primary purpose of the sentencing statute, 18 U.S.C. 3553(a), is for the sentencing court to impose a sufficient sentence, but not one that is greater than necessary. 18 U.S.C. § 3553(a) allows the Court to take into account the particularized factors of Ms. Albritton's life and not just the fact of her criminal conduct. This approach is consistent with the goals of 28 U.S.C. § 991(b)(1)(B) supports a sentence that is not determined, solely, by a rigid formula that ignores the statutory factors set forth in 18 U.S.C. § 3553(a).

Congress created the Sentencing Commission with the goal of developing a methodology and structure by which Courts could achieve uniformity and fairness in sentencing. However, the enabling statute did not lose sight nor preclude the notion of individualized sentencing. 28 U.S.C. § 991(b)(1)(B) provides Sentencing Courts with discretion to "maint[ain] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment to general sentencing practices." Application of 18 U.S.C. § 3553(a) along with the flexibility encouraged by 28 U.S.C. § 991 (b)(1)(B) strongly suggests that a sentence of probation accomplishes the goals of the two statutes.

**The Nature and Circumstances of the Offense**

Ms. Albritton's nonviolent criminal conduct took place during a difficult period in her life. Her mother's homelessness and her attempt to help her caused her to act in a way that was completely inconsistent with her guiding values and principles. Ms. Albritton never denied her criminal responsibility nor minimized her conduct.

5

**History and Characteristics of Ms. Albritton**

Ms. Albritton is a motivated and capable person. She has persevered and attended vocational schools. Currently, she is gainfully employed and is in good standing with her employer. With the exception of the instant offense, Ms. Albritton has led a productive and law abiding life. Ms. Albritton's efforts to lead a productive life can be characterized by hard work, and the desire to learn with the goal of improving and realizing her professional and personal potential. Although, Ms. Albritton brought about her current adversity and predicament, she has managed to pick herself up through her own efforts and determination.

**The Sentence should reflect the Seriousness of the Offense**

Ms. Albritton recognizes that the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law and provides just punishment. While the sentence must provide deterrence and protect the public, it must also provide Ms. Albritton with educational and vocational training and medical care. In balancing all of the purposes of sentencing, the Court must also impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2)[§ 3553]." See 18 U.S.C. § 3553(a).

A sentence that places Ms. Albritton on probation and/or restricts her to home confinement would be more than adequate to meet the sentencing purposes and allow her to meet her restitution obligations which she has already begun paying set forth in 18 U.S.C. § 3553(2)(a). The felony conviction on its own will have employment and voting restrictions for the rest of her life. Probation will require a sustained commitment to responsible behavior.

Ms. Albritton recognizes the seriousness of her criminal conduct and readily took responsibility for her actions. Upon being confronted with her embezzlement, Ms. Albritton immediately admitted her actions. When Ms. Albritton met with undersigned counsel, she immediately states that she committed a crime and had to suffer the consequences.

Incarceration would result in a sentence that is "greater than necessary." Incarceration will certainly cause Ms. Albritton substantial suffering. Beyond her removal from the community Ms. Albritton will lose her job. Without her job, it would be extremely difficult for Ms. Albritton to make restitution. This would be a terrible outcome for a capable and hard working woman who up until she began embezzling from her employer had led an exemplary personal and professional life.

**The sentence should afford adequate deterrence to criminal conduct**

A sentence of probation will more than adequately protect the public and achieve adequate deterrence for the following reasons. First, Ms. Albritton is a first time offender who throughout her life has demonstrated sound decision-making skills. She will be subjected to a strict supervision regimen that will include reporting to a probation office, submitting monthly financial reports, making mandatory restitution payments and will be required to report any change in her residence, employment and travel outside of the metropolitan area.

Ms. Albritton has been shamed by her conduct. Knowing that she will be forever branded as a convicted felon has been extremely painful, humiliating and resulted in endless self-deprecation. She knows that she has disappointed her mother. The felony conviction will automatically preclude Ms. Albritton from being hired for a financial

position of trust. It is doubtful that any finance or business-oriented company would consider hiring her.

Her obligation to pay more that $75.000.00 dollars in restitution requires significant responsibility, planning and the commitment to lead a modest life. All these factors will weigh heavy in her everyday life. By no means would this structure of obligations and responsibilities be a mere slap on the wrist. It can be reasonably assumed that recidivism for Ms. Albritton is unlikely due to her age. See Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12, 28 (2004), www.ussc.gov/publicat/Recidivism_General.pdf ("recidivism rates decline relatively consistently as age increases,"). Moreover, the terms and requirements of probation and/or home detention would adequately protect the public.

**The sentence should provide the most effective rehabilitative treatment**

A sentence of probation and/or home confinement would most effectively result in Ms. Albritton's rehabilitation. If placed on probation and/or home confinement, Ms. Albritton can continue the progress she has thus far demonstrated in her current employment. She will also remain in a position to continue her restitution payments. Any period of incarceration will undermine the post offense rehabilitation that has already taken place, it will mean the loss of her job, of her livelihood, and she will be hard pressed to make restitution payments after leaving prison.

A sentence of probation, which includes mandatory restitution, community service and home confinement, along with the life long consequences of a felony conviction can be "just punishment" when the Court considers 18 U.S.C. § 3582(a). In pertinent part 18 U.S.C. § 3582(a) states

8

> "the Court, in determining whether to impose a term of imprisonment, and if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation" (emphasis added)

**CONCLUSION**

Ms. Albritton is a decent and well-meaning woman who made a terrible decision. That decision has cost her dearly. Ms. Albritton now has a felony conviction on her record that will have consequences for the remainder of her life. Ms. Albritton knows that she cannot undo her mistake. She does know however that she will never engage in any activity that will put her livelihood in jeopardy. In the context of Ms. Albritton's character and background, it is safe to assume that it is very unlikely that she will engage in any further criminal conduct.

Ms. Albritton want s the Court to give her an opportunity so that she may demonstrate that she will continue to lead an exemplary life that is characterized by honesty, hard work and responsibility to her community and family.

So that Ms. Albritton does not lose sight of her transgressions, undersigned counsel requests that the Court sentence her to a period of Probation of five years and that she serve her first year under electronic home monitoring consistent with her work schedule.

                              Respectfully Submitted,

                              _____/s/_____
                              Rudolph Acree, Jr.
                              1211 Connecticut Ave., N.W.
                              Suite 506
                              Washington D.C. 20036
                              Counsel for Ms. Albritton

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing Defendant's Memorandum In Aid of Sentencing was sent via Electronic Case Filing (ECF) to all the parties involved on this 25th day of June 2008.

/s/<br>
Rudolph Acree, Jr.